## 59937. HAMMOND v. FEDERAL LAND BANK OF COLUMBIA et al.
## 59938. WALLACE v. FEDERAL LAND BANK OF COLUMBIA et al.
## 59939. BOLING v. FEDERAL LAND BANK OF COLUMBIA et al.

BIRDSONG, Judge.

Summary judgment. For a fuller statement of the facts of this case, see *Boling v. Federal Land Bank of Columbia,* 243 Ga. 467 (254 SE2d 848). In essence the relevant facts show that one Smith bought 1,250 acres of land for $1,200,000 and had a repurchaser for the same land for $2,200,000, thus realizing a quick profit of $1,000,000. Smith, however, encountered difficulty in obtaining a loan of $1,200,000 to pay off his seller. Smith, together with the president of the Gainesville branch of the Federal Land Bank of Columbia (S. C.) and the chief appraiser of that bank, entered into a conspiracy to divide the 1,250 acres into ten sections, ostensibly to sell the ten sections to willing purchasers for approximately $130,000-$150,000 per section, but the combined purchase price would be paid through Smith to his seller. It was agreed that as soon as the loan was completed, each of the ten purchasers would transfer their interest to Smith, Smith would be fully responsible for the loans and the bank would give each of the ten purchasers a full release of all liability. The property was divided, the purchases made, and the money paid through Smith to his seller. However, the resale did not occur, the releases were not given and the promissory notes executed by the ten purchasers were not assumed by Smith. Smith and/or the bank president told each of the ten purchasers that Smith had been denied credit and that the notes were to get around the denial of the Land Bank in Columbia to extend Smith the necessary credit to purchase the property. Each purchaser was also told that any profits made on the "deal" would be shared by all but that Smith would stand any and all losses.

Each of the notes came into default and the Land Bank sought to foreclose on the promissory notes and security deeds. The ten purchasers then brought suit against the parent Land Bank in Columbia, seeking to relieve them of any obligation based upon the fraud of the president of the subsidiary bank in Gainesville and the releases promised them as well as other appropriate defenses. The appellee bank sought summary judgment on the complaint brought by the ten purchasers. The trial court granted summary judgment to the bank on November 8, 1978. Two of the ten purchasers (Boling and Wallace) filed an appeal to that judgment, and it was that appeal that formed the basis of the opinion by the Supreme Court in 243 Ga. 467,

supra. The appellant Hammond (Case No. 59937) did not join in the appeal in 1978, but seeks now to bring an appeal to the grant of summary judgment of November 8, 1978. Subsequent to the grant of summary judgment, the bank foreclosed on the property and obtained confirmation of the sale. *Grizzle v. Federal Land Bank,* 145 Ga. App. 385 (244 SE2d 362). The Land Bank then sought deficiency judgments against each of the purchasers for the difference between the outstanding balance of each loan following deduction of the amount brought by the sale of the individual sections. The Land Bank moved for summary judgment against each of the ten purchasers, and the trial court granted the bank summary judgment on January 8, 1980. It is this second grant of summary judgment that forms the basis of this appeal by Wallace and Boling. Hammond joins to the grant of summary judgment on the deficiency of January 8, 1980, the original grant of summary judgment of November 8, 1978. *Held:*

As to the appeals of Boling (Case No. 59939) and Wallace (Case No. 59938), we observe that in its opinion the Supreme Court said: "The essence of appellants' complaint is that they were fraudulently induced to enter into the transaction and sign the notes and security deeds to the bank upon the false representations of a bank's officer that they would be relieved of liability. Appellants would like to isolate these representations from the overall scheme and *thus escape liability on the notes they executed.* Unfortunately for appellants the evidence shows the entire scheme was well known to them and they did not rely upon the bank officer's representation." (Emphasis supplied.) *Boling v. Federal Land Bank,* supra, p. 469. It is clear that in its opinion, the Supreme Court concluded the issue of liability as between the bank and the ten purchasers after fully considering the allegations of fraudulent promises of the bank president as well as the other six bases offered by appellants (i. e., reformation of the notes, specific performance, wrongful foreclosure, conversion, fraud and deceit, and negligent supervision).

An analysis of the enumerations and arguments of the appellants Boling and Wallace on this appeal disclose an attack upon the notes underlying the deficiency sought from each purchaser. In substance, Boling and Wallace argue now that there was no showing that they intended to purchase the property (i. e., no meeting of the mind on a contract); that there was no consideration (they did not get anything for their execution of the notes); and that they should be excused because of the fraudulent representations of the bank officer that they would be excused from the indebtedness. Each of these enumerations was considered either directly or by implication by the Supreme Court when it concluded that the bank was entitled to

summary judgment on the legality of the notes (i. e., liability thereunder). As between these parties (the bank and Boling and Wallace), we will not again litigate the issues raised in Cases 59938 and 59939.

As to the enumeration of error by Hammond (Case No. 59937) relating to the grant of summary judgment of November 8, 1978, going to liability, the only distinction offered by Hammond to exempt him from the grant as to the other appellants was that Boling and Wallace were approached by Smith whereas Hammond was approached by Patton (the president of the Gainesville bank). It is Hammond's contention that somehow this made him only an accommodation maker to Smith's indebtedness, that the bank officer promised him unconditional release and because of the release, Hammond had deeded the property to Smith and lastly that he (Hammond) was entitled to excusal from the indebtedness because of his reliance on the fraudulent representations of the bank officer even if Boling and Wallace were not. Hammond combines these contentions into the argument that questions of fact as to his liability remained.

We find each of these arguments miss the basic point. The same evidence of knowledge of the fraudulent nature of the scheme was presented against Hammond as against all the other purchasers. Smith testified that Hammond was well aware of the entire purpose of the loan. It follows that each of the arguments put forward by Hammond must meet the same fate as those advanced by Boling and Wallace. The issue of liability as between the bank and each of the purchasers has already been considered by the Supreme Court. The reasoning and conclusions as to Hammond can be no different. We conclude therefore that the trial court did not err in granting summary judgment to the bank as to Hammond on the issue of liability.

Even if we were somehow to go beyond the dispositiveness of the prior adjudication, we still would be faced with the legal principles that the note between the bank and Hammond was required to be in writing (as it was). Hammond cannot now be permitted to vary the contents of that note in writing by a contemporaneous oral contradiction. *Pulliam v. Merchants &c. Bank,* 33 Ga. App. 68 (125 SE 509). Nor may allegations of fraud be of assistance to Hammond where he was aware of the nature of the fraudulent scheme from the beginning (*Woodall v. Beauchamp,* 142 Ga. App. 543 (236 SE2d 529)), a premise previously established by the Supreme Court in this litigation. *Camp v. Hatcher,* 119 Ga. App. 63, 69 (166 SE2d 422).

We conclude therefore, that it was not error for the trial court to grant summary judgment to the bank as against Boling, Wallace and

Hammond for the existing deficiency for if the underlying indebtedness was valid, so must the deficiency arising from that indebtedness.

*Judgments affirmed. Deen, C. J., and Sognier, J., concur.*

ARGUED MAY 6, 1980 — DECIDED JULY 11, 1980 — REHEARING DENIED JULY 24, 1980 —

*Robert J. Reed,* for appellant (Case No. 59937).

*William H. Blalock, J. Douglas Stewart, Charles B. Rice, Emory F. Robinson, Albert Sidney Johnson,* for appellees.

*Albert Sidney Johnson, Benning M. Grice, Jr.,* for appellants (Cases No. 59938, 59939).

*William H. Blalock, J. Douglas Stewart, Charles B. Rice, Emory F. Robinson, Robert J. Reed,* for appellees.